(No. 12396.—Judgment affirmed.)

STANLEY MILAUSKIS, Defendant in Error, *vs.* THE TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Plaintiff in Error.

*Opinion filed February 20, 1919.*

1. NEGLIGENCE—*when amended counts are not open to plea of Statute of Limitations.* Amended counts in an action for personal injury, filed more than two years after the injury, are not open to a plea of the Statute of Limitations, where such amended counts state the same cause of action as is stated in the original counts but in a different manner.

2. SAME—*what must be alleged and proved in action for personal injury.* In an action for personal injury it is necessary to allege and prove the existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains, the failure of the defendant to perform that duty and an injury to the plaintiff resulting from such failure.

3. SAME—*when amended counts do not state a different cause of action.* Where the original declaration in an action for personal injury charges that as a result of the injury it was necessary to amputate the plaintiff's right arm and the fingers of his left hand, amended counts alleging that the amputation was of the left arm and the fingers of the right hand, and changing the allegation as to the name of the plaintiff's employer, who was not the defendant, do not state a new or different cause of action.

4. SAME—*nature of business largely determines distinction between a mere licensee and visitor by invitation.* The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming.

5. SAME—*duty of owner to guard licensee against injury is governed by rules applicable to trespassers.* Permission involves leave and license but gives no right, and while a permission or license to a mere licensee is a justification for his entry upon premises, the duty of the owner to guard him against injury is governed by the rules applicable to trespassers.

6. SAME—*duty of the owner to protect a visitor by invitation.* If a person is upon the premises of the owner by an invitation, express or implied, and not by mere permission, it is the duty of the owner to exercise ordinary care to keep the premises in a reasonably safe condition.

7. SAME—*when employee in ice plant is on railroad property by invitation.* An employee in an ice plant situated adjacent to the tracks of a terminal railroad company and used for re-icing cars handled by such company is on the railroad property by invitation when walking along a beaten path at the side of the tracks where it was agreed between his employer and the railroad company that employees of the ice plant should walk when going to and from the plant.

8. SAME—*contributory negligence is ordinarily a question for the jury.* The questions of negligence and contributory negligence are ordinarily questions of fact, which should be left by the court to the jury.

9. SAME—*when questions of fact cannot be reviewed.* It is not the province of the Supreme Court to determine questions of fact in actions at law coming through the Appellate Court further than to ascertain whether or not there is in the record evidence fairly tending to prove the facts alleged in the declaration.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding.

T. M. PIERCE, EDWARD C. KRAMER, RUDOLPH J. KRAMER, and BRUCE A. CAMPBELL, for plaintiff in error.

PAUL IROSE, DAVID E. KEEFE, and W. E. HADLEY, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant in error secured a verdict against plaintiff in error in the city court of East St. Louis for $2000 for injuries alleged to have been caused by the negligence of plaintiff in error. From a judgment entered thereon the case was taken by appeal to the Appellate Court and the

judgment of the trial court was affirmed. The case has been brought here on a petition for *certiorari*.

From the record before us it appears that plaintiff in error owns and controls a ·large number of railway tracks in East St. Louis, in St. Clair county. Said tracks consist of one lead track and thirty or thirty-five yard tracks, extending in a northerly and southerly direction across St. Clair avenue, in said city. St. Clair avenue runs in a northwesterly and southeasterly direction and the tracks crossing it run in a southwesterly and northeasterly direction, but the briefs give the directions as if St. Clair avenue ran east and west and the tracks ran north and south, and we shall use those directions in writing this opinion. Plaintiff in error's lead track crosses St. Clair avenue a little north of Cahokia creek. The yards of plaintiff in error are south of Cahokia creek, the lead track being on the side of the yards. Where each of the yard tracks comes into· the lead track there is a switch, the switch-stand in each case being situated about four feet west of the westerly rail of the lead track. The yard tracks, the lead track and the space extending from the lead track westerly past the switch-stands were ballasted with cinders, thus making a smooth space along the west side of the lead track, and the switchmen, in operating the switches and in walking along with and getting on and off the cars handled on this lead track had made a pathway along the west side of this lead track that had been in use there for many years. Defendant in error had been engaged at work for the Armour Car Lines for about five months prior to July 16, 1913, the day he received the injury. An ice plant belonging to the Armour Car Lines was located about a quarter of a mile south of St. Clair avenue, near said lead track. It was used for re-icing the cars, and did business with Armour & Co., Swift & Co., Morris & Co. and other packing plants and with certain fruit dispatchers. On the day of the injury the defendant in error was at work in this ice

plant. Armour & Co.'s office was located near the lead track, about half a mile northerly from the ice plant. The ice plant was surrounded by the railroad tracks of plaintiff in error, and, as we understand the record, there was no public way for the employees of the Armour Car Lines to reach the ice plant from the streets of East St. Louis except by passing over plaintiff in error's property. There was a beaten track about four feet wide on the west side of the lead track extending from below the ice plant up to St. Clair avenue, and the men engaged at the ice plant usually came from St. Clair avenue down across and over plaintiff in error's railroad tracks and along this beaten track. The cars of the several companies that needed re-icing were placed upon the tracks of plaintiff in error and run down to the ice plant, and were there iced and then taken back to the main or lead track for shipment. Defendant in error and five or six of his associates on the day in question received orders for the payment of their wages, and by direction of the Armour Car Lines officers went to the office of Armour & Co. and cashed their orders and were returning to their work at the ice plant. After crossing St. Clair avenue they passed south on the west side of the lead track along this beaten path, and after going a short distance south from St. Clair avenue defendant in error was struck and run over by one of plaintiff in error's cars and badly injured, losing his left arm and part of the fingers of the right hand.

The evidence tends to show that just after defendant in error had left St. Clair avenue, going south, he passed a train consisting of an engine and five or six cars on one of plaintiff in error's tracks, and it further appears that very shortly thereafter the employees of plaintiff in error, without sounding the whistle or ringing the bell, pushed the rear car of this train or cut of cars in upon this lead track, and it was permitted to run down the track without any brakeman and without warning of any kind being given

of its approach; that it came upon defendant in error from the rear and struck him; that he and another employee were walking side by side along this beaten track and three or four of the others were walking singly behind him and that the car passed by them before it struck defendant in error, but that they had no warning of its approach and no time to warn the others. The evidence also shows that at this time another train was passing along the tracks close by, making considerable noise, and partially, if not entirely, for this reason neither defendant in error nor any of his associates heard the approach of the shunted car which caused the injury. The evidence further tends to show that during or prior to May, 1913, there had been some stealing or pilfering in plaintiff in error's yards, and the superintendent of the Armour Car Lines and the superintendent of the ice house had a conference with the general superintendent of plaintiff in error with a view of stopping the men from traveling over the railroad tracks, generally, in said yards and to confine the traveling of their employees to a particular place. As a result of this conference it was agreed that in going to and from their work the employees of the Armour Car Lines at said ice plant were to travel along this beaten pathway on the west side of the lead track, where defendant in error was traveling at the time he was injured. The employees of the Armour Car Lines were called together after this conference and directed to thereafter travel along this beaten way in going to and from work. Defendant in error was present when these directions were given.

The original declaration of defendant in error filed on his behalf in the city court contained three counts. The first, after setting forth in a general way the facts as above stated, further averred that while defendant in error was in the exercise of due care for his own safety, plaintiff in error carelessly, negligently and without warning pushed a large number of freight cars along and over said track, by

reason whereof defendant in error was struck and injured. The second and third original counts were substantially the same as the first except as to certain details. More than two years after the alleged injury amended counts were filed to the declaration, alleging substantially the same negligent acts on the part of plaintiff in error as in the original counts and alleging the facts substantially as they were alleged in the original counts, the only difference in the amended and original counts being that the original counts charged that defendant in error was in the employ of Armour & Co. and the amended counts charge that he was in the employ of the Armour Car Lines, and the original declaration also charged that it was necessary to amputate defendant in error's right arm and the fingers of his left hand, while the amended counts charge that it was necessary to amputate his left arm and the fingers of his right hand. Plaintiff in error upon the trial in the city court filed a plea of the Statute of Limitations to the amended counts, to which plea a demurrer filed by defendant in error was sustained. If the original counts stated the same cause of action as was stated by the amended counts and only stated them in a different manner, then the demurrer was properly sustained to the plea of the Statute of Limitations, but if the amended counts set out a new cause of action other and different from that stated in the original counts, then the demurrer should have been overruled and the plea of the Statute of Limitations sustained. *Swift Co.* v. *Gaylord,* 229 Ill. 330; *St. Louis Merchants' Bridge Railway Ass'n* v. *Schultz,* 226 id. 409; *McInerney* v. *Western Packing Co.* 249 id. 240; *Vogrin* v. *American Steel Co.* 263 id. 474.

This court has stated that in actions of this character it is necessary to allege and prove, in order to make out a case, three things: (1) The existence of a duty on the part of defendant to protect the plaintiff from the injury

of which he complains; (2) the failure of the defendant to perform that duty; and (3) an injury to the plaintiff resulting from such failure. (*Bahr* v. *National Safe Deposit Co.* 234 Ill. 101, and cases there cited.) These three elements were averred in the original counts of the declaration substantially as they were averred in the amended counts of the declaration. In *Wolf* v. *Collins,* 196 Ill. 281, this court said (p. 284): "We think the amended declaration did not state a new cause of action. The gist of both counts was the negligent shaking of the brace. The fact that the rope was untied was a mere incident in causing the brace to fall. The act which caused it to fall was the shaking it out of the flange. It no more stated a new cause of action than if the plaintiff had alleged in an additional count that the foreman negligently pulled the brace out of the flange with his hands, instead of negligently placing the wrench in a hole in the brace and shaking it out of the flange." (See, also, the reasoning on this point in *Swift & Co.* v. *Madden,* 165 Ill. 41.) In *Swift & Co.* v. *Foster,* 163 Ill. 50, it was held that the addition of counts in a suit for the death of an employee from the fall of lumber while being hoisted, charging that such fall was due to the use of a defective cog-wheel, was not the setting up of a new cause of action barred by the Statute of Limitations subsequent to the original commencement of the action, although it was originally alleged that the fall was from the negligence of an employee not a fellow-servant, in using the machinery. The original declaration in this case stated a cause of action, and after having stated such cause, setting up the negligence of plaintiff in error and the care of defendant in error, it recited other facts by which rights accrued, and these other facts were recited in a different way in the amended counts of the declaration. These facts that were stated differently did not go to make the negligence complained of, and while the allegation of

the different facts in the original and amended declarations might be said to constitute a variance, yet, as this court stated in *Carlin* v. *City of Chicago,* 262 Ill. 564, on page 571, "the doctrine of variance is one thing and the statement of another and different cause of action is something else." (See, also, *Chicago City Railway Co.* v. *McMeen,* 206 Ill. 108.) The original declaration charged that it was necessary to amputate defendant in error's right arm and the fingers of the left hand, while the amended declaration alleged, and the proof showed, that it was necessary to amputate his left arm and the fingers of his right hand. This difference in the allegations between the amended and the original declaration was only an incident to the cause of action, and the change in the declaration in this regard did not go to the gist of the action in any way and was in no way controlling as to the cause of action. If plaintiff in error was liable under either the original or amended declaration it was because defendant in error was rightfully on plaintiff in error's premises and because of the negligence of plaintiff in error in causing the injury. The cause of action did not in any manner depend on the extent or nature of his injuries, but rested upon the question whether or not there was some act or omission of plaintiff in error contrary to law that caused such injuries. Of like nature was the change in the amended declaration that defendant in error was employed by the Armour Car Lines instead of by Armour & Co. The company by which he was employed was merely one of the incidents to the gist or cause of action, and in no way, either under the allegations of the original or amended count, affected in any manner the question as to whether or not it was the duty of plaintiff in error to protect him from the injury of which he complained or whether the failure of plaintiff in error to perform that duty caused the injury to defendant in error, and therefore in no way affected the real cause of action. The effect of the amendment in the amended counts, in so far

as they differ from the original counts, simply avoided a variance between the proofs and the declaration and did not state a new or different cause of action.

Counsel for plaintiff in error further argue that at the time of the injury defendant in error was a mere licensee upon the property of plaintiff in error, and that therefore plaintiff in error owed him no other duty than to refrain from willfully or wantonly injuring him. It is conceded by plaintiff in error that defendant in error was not a trespasser, but it is argued strenuously that at the most he was a mere licensee, by permission and not by invitation, and that therefore the only duty plaintiff in error owed him would be the same as if he were a mere trespasser. The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there rather than on the words or acts of the owner which precede his coming. Permission involves leave and license but it gives no right. The permission or license is a justification for his entry, and while he is not technically a trespasser, yet the duty of the owner to guard him against injury is governed by the rules applicable to trespassers. "The duty to one who comes thereon by the owner's invitation to transact business in which the parties are mutually interested is to exercise reasonable care for his safety while on that portion of the premises required for the purpose of his visit. Under such circumstances the party is said to be on the premises by implied invitation of the owner." (*Pauckner* v. *Wakem,* 231 Ill. 276.) If a person is upon the premises of the owner by an invitation, expressed or implied, and not by mere permission, then such owner owes him a duty to exercise ordinary care to keep the premises in a reasonably safe condition. (*Purtell* v. *Philadelphia Coal Co.* 256 Ill. 110.) "To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant

is engaged or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." (*Plummer* v. *Dill*, 156 Mass. 426; 3 Elliott on Railroads,—2d ed.—585.) In *Illinois Central Railroad Co.* v. *Hopkins*, 200 Ill. 122, a person went to a railroad depot to deliver meals to mail clerks on a train in accordance with an arrangement which had been carried out for some years with the knowledge and consent of the railroad company. It was held that such person was not there as a mere licensee but was upon the company's premises by an implied invitation to transact business there, the court saying (p. 125) : "We are of the opinion the jury were authorized to find that the plaintiff, at the time she was injured, was upon the platform of the defendant upon its implied invitation, in a matter in which it was interested."

From this record it is perfectly plain that the work in which defendant in error was engaged was one in which plaintiff in error was interested. He was assisting in icing cars which were switched to the icing plant and in taking the ice from the cars that were switched there by plaintiff in error. The work in which he was engaged was not only of mutual interest to defendant in error and his employer, but it related to a business in which plaintiff in error was likewise interested. By agreement between defendant in error's employer and plaintiff in error there was a pathway marked out for him to follow in going to and from his work and he was traveling along this pathway, and therefore he was neither a trespasser nor a licensee but was plainly there by the invitation of plaintiff in error and engaged in an employment in which plaintiff in error, to a certain extent, was interested. The reasoning of the following cases, among others, tends to support this conclu-

sion: *Sweeney* v. *Old Colony Railroad Co.* 10 Allen, 368; *St. Louis, Iron Mountain and Southern Railway Co.* v. *Dooley,* 77 Ark. 561; *Bennett* v. *Railroad Co.* 102 U. S. 577. If defendant in error was on the premises by invitation plaintiff in error owed him a duty to use reasonable care, and the evidence shows that it absolutely failed and neglected so to do, and consequently it was liable for the injury to him, as alleged in the declaration.

Counsel for plaintiff in error further argue that defendant in error was guilty of contributory negligence and that therefore there ought to be no recovery. The questions of negligence and contributory negligence are ordinarily questions of fact, which should be left by the court to the jury. (*Elgin, Joliet and Eastern Railway Co.* v. *Thomas,* 215 Ill. 158; *Wabash Railway Co.* v. *Brown,* 152 id. 484.) This court has consistently held in numerous decisions that it was not the province of this court to determine or pass upon questions of fact, further than to ascertain whether or not there was in the record evidence fairly tending to prove the facts alleged in the declaration; that the weight to be given to the evidence must be submitted to the jury, and when their finding of fact has been approved by the trial and Appellate Courts no question of fact can be raised here. There can be no question from the record that there is evidence found therein which fairly tends to support defendant in error's cause of action on the questions of fact, and therefore the evidence as to these questions of fact can not be reviewed. *Reiter* v. *Standard Scale and Supply Co.* 237 Ill. 374, and cases there cited.

We find no material error in the record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*