Evva Moore Jones, Appellee, v. 20 North Wacker Drive Building Corporation and Chicago Civic Opera Company, Appellants.

Gen. No. 44,117.

Opinion filed November 3, 1947. Released for publication November 18, 1947.

D'ISA & ARPAIA, of Chicago, for appellants; EZRA L. D'ISA, of Chicago, of counsel.

SIDLEY, AUSTIN, BURGESS & HARPER, of Chicago, for appellees; JAMES F. OATES, JR., HOWARD P. ROBINSON and WALTER J. CUMMINGS, JR., all of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

This appeal by defendants from a judgment in a personal injury case presents a single question. Was the plaintiff at the time and place of her injury an invitee or merely a licensee or permittee on the premises of defendants?

Defendants, standing by their motion to direct a verdict at the close of plaintiff's case, offered no evidence. There is no conflict in the testimony presented by plaintiff. After the United States Treasury Department had contacted defendants a Mrs. Meigs of the Chicago Drama League obtained permission from defendants' manager to use the foyer or lobby of the Chicago Civic Opera House for the sale of war bonds and stamps before and during the intermissions of performances. The drama league selected the sales persons, managed and directed them in their work and made all reports, remittances, etc., to the government. Beyond furnishing the space and physical facilities for the conduct of the sales and storing the strong box containing bonds and stamps in the office safe, the defendants had nothing whatever to do with the sale of these bonds and stamps. They learned only from casual conversations the amount of the sales. There was nothing for the sales persons to do while the performances were being given on the stage and a custom arose, with the knowledge and acquiescence of defendants' manager, whereby the sales persons entered the auditorium and occupied vacant seats. Sometimes they were directed to the seats by ushers. Mrs. Meigs testified that there wasn't any arrangement made with defendants' manager to occupy the vacant seats; that they were graciously permitted to use them; that there were very cold winter nights, the foyer was not heated and the women went in to get out of unpleasant conditions and because they were permitted to; there was no agreement. On the night of January 11, 1943, plaintiff was engaged in selling bonds and stamps on the mezzanine floor of defendants' building. In attempting to go to a vacant seat on that floor during the performance she fell and sustained the injuries for which she was awarded judgment. Her action is based on negligence.

 The distinction between an invitee and a mere licensee and the duties of the owner or occupant to each is stated in *Milauskis v. Terminal Ry. Ass'n of St. Louis,* 286 Ill. 547, 555, 556, as follows: "The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there rather than on the words or acts of the owner which precede his coming. Permission involves leave and license but it gives no right. The permission or license is a justification for his entry, and while he is not technically a trespasser, yet the duty of the owner to guard him against injury is governed by the rules applicable to trespassers. 'The duty to one who comes thereon by the owner's invitation to transact business in which the parties are mutually interested is to exercise reasonable care for his safety while on that portion of the premises required for the purpose of his visit. Under such circumstances the party is said to be on the premises by implied invitation of the owner.' (*Pauckner v. Wakem,* 231 Ill. 276.) If a person is upon the premises of the owner by an invitation, expressed or implied, and not by mere permission, then such owner owes him a duty to exercise ordinary care to keep the premises in a reasonably safe condition. (*Purtell v. Philadelphia Coal Co.,* 256 Ill. 110.) 'To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.' " The parties hereto accept these rules of law. They differ as to the application of them to the facts presented on the record. Plaintiff contends that she was

an invitee upon the premises, engaged in a work in which the parties hereto, the drama league and the United States government had a mutual interest— the winning of the war through the sale of bonds and stamps; and further, that under the duress of public opinion, bonds and stamps being at the time sold in all theatres, hotels, etc., defendants were obliged to afford facilities for such sale in its foyer or risk the loss of the good will of the public and a consequent loss of patronage; that therefore defendants had a pecuniary or material interest in the sale of these bonds and stamps on their premises. Defendants' position is that plaintiff was a mere licensee or permittee to whom they owed no duty except to refrain from wilful or wanton injury; that the alleged interests urged by plaintiff are not sufficient to make her an invitee.

Plaintiff relies upon the case of *Thuente v. Hart Motors,* 234 Iowa 1294. In that case plaintiff volunteered to aid in the collection of scrap iron as a war effort; the defendant furnished a truck and driver to aid in the work; plaintiff was injured while riding on the truck when hauling certain scrap which he, the driver and others had collected; one of the defenses interposed to plaintiff's action was that plaintiff was a guest riding on defendant's truck and therefore defendant would not be liable except for wilful or wanton injury. The reviewing court held that the guest statute had no application, and said: "Plaintiff and defendant were engaged in a patriotic, community project to aid the war effort. Defendant furnished a truck and a driver. Plaintiff was one of those who furnished physical labor required to load and unload the truck. The purpose of each was to aid the defense of his country. The trip was advantageous to each in the accomplishment of their mutual enterprise." The facts of the Iowa case distinguish it from the case at bar and, independent of the patriotic motive injected into the case, bring it within the general rules of law

making the guest statute inapplicable because both plaintiff and defendant's agent were actively engaged in a mutual enterprise—the collecting of scrap iron. The rights of the parties would not have been different had they been engaged in collecting a commodity for their personal use. In the instant case defendants took no part in the sale of the bonds and stamps. They merely furnished the place and the physical facilities for making the sale. Neither the place nor the physical facilities were defective and no injury resulted from their use. Whatever interest they had in the sale of bonds and stamps from a patriotic standpoint was no greater or different than that of the more than 135 million residents of the United States.

In opposition to plaintiff's contention defendants cite the case of *Colbert v. Ricker*, 314 Mass. 138, 49 N. E. 2d 459. In that case the defendant, a married woman, permitted her husband to conduct his construction business from her premises as a mere licensee. Plaintiff, who was upon the premises to see the husband in reference to some construction work, was injured. Defendant had no financial or proprietary interest in the business of the husband, although as his wife she was naturally interested in his commercial success. It was held that permitting him to use the house in conducting his business did not make her a joint adventurer in the business and therefore liable to one on the premises solely for the purpose of conducting business with the husband. As said in the *Milauskis* case, quoted above, the entry of the person upon the premises of another must be in connection with the business of the owner conducted thereon to transform a licensee into an invitee. This necessarily means the personal business of the owner or occupant of the land and not the general business of the public in which the interest of the owner or occupant can be no greater or different than that of others constituting the general public.

■ The further claim of plaintiff that defendants were obliged to permit the sale of bonds and stamps on their premises in order to preserve or promote the good will of the public is also untenable. There is no evidence in the record to support this claim. We are asked to accept as a matter of judicial knowledge that such sales were made throughout the war in the lobbies of theatres, hotels, office buildings, etc., and that the owner of any building refusing to permit such sales would forfeit the good will of the public. If we concede that such result would follow refusal to permit sales of bonds and stamps on defendants' premises, there is no evidence that defendants realized that such result would follow their refusal or that they granted permission for the sale of the bonds and stamps in order to avoid loss of good will or patronage. Plaintiff, being a mere licensee in entering upon the premises for the sale of bonds and stamps, remained a licensee when attempting to go to a vacant seat during the performance and is not entitled to recover.

The judgment is reversed.

*Reversed.*

FEINBERG and O'CONNOR, JJ., concur.