## Paul R. Ellguth, Appellee, v. Blackstone Hotel, Inc., Appellant.

### Gen. No. 44,929.

Niemeyer, J., dissenting.

Opinion filed May 8, 1950. Released for publication May 23, 1950.

John J. Maciejewski, of Chicago, for appellant.

Joseph Barbera, of Chicago, for appellee.

Mr. Justice Feinberg delivered the opinion of the court.

Plaintiff sued defendant for personal injuries, resulting from the alleged negligence of defendant. Upon a trial with a jury, a verdict for $35,000 was returned for plaintiff, and a special interrogatory, answered by the jury in the affirmative, found that plaintiff at the time of the occurrence was in the exercise of due care and caution for his own safety. Alternative motions for judgment notwithstanding the verdict and for a new trial were filed by defendant and overruled by the trial court. The court required plaintiff to file a remittitur of $7,000, and judgment was entered for $28,000, from which defendant appeals.

The theory of plaintiff's complaint was that plaintiff was an invitee of defendant, upon defendant's premises in connection with the dismantling and removal of some old coolers in the basement of the hotel property operated by defendant.

The grounds urged for reversal are that the facts establish that plaintiff was a licensee and not an invitee; that plaintiff was guilty of negligence as a matter of law; that plaintiff's instructions Nos. 7, 10 and 13 are erroneous; that the verdict and judgment are against the manifest weight of the evidence; and that the judgment is excessive.

589

It appears from the evidence that at the time of the accident, plaintiff was 75 years of age, 6 feet tall, and blind in his left eye from early childhood, but otherwise in good health. Shortly before the accident, he was working occasionally as a contractor of odd jobs, employing two or three men, earning approximately $1,000 per year. In the basement of the Blackstone Hotel, operated by defendant, were several old refrigerators, located in a storage room. They were made of wood and plaster and contained some iron pipe. Approximately 140 feet west of this storage room was located a tunnel that ran underneath an alley and connected the basement of the Blackstone Hotel with that of the Blackstone Theatre, located across the alley. A passageway about 8 feet wide and 8 feet high led from the storage room to the entrance of the tunnel. The tunnel was about 18 feet long. There was a metal door at the entrance to the tunnel, which was always kept open. Defendant, for a number of years prior to the accident in question, had made use of this tunnel to get to its paint shop and equipment, but beginning shortly before the month of July 1946, the tunnel was used daily by the engineer to go over and check the vacuum pumps which supplied the theatre with heat and steam, and without question, defendant had control of the tunnel. It is undisputed that there was no natural light penetrating the areaway leading to the tunnel, but there was maintained in this areaway two 100 watt incandescent lamps. There is a dispute in the evidence as to whether these lamps were burning at the time of the accident. It also appears that some of the pipe and timbers removed from these refrigerators were 15 feet or more in length and could not be taken up on the service elevator that ran from the basement of the hotel to the floor above.

Defendant's witness Davidson, superintendent of maintenance, and defendant's witness Douglas, his as-

sistant, maintained their headquarters in the engine room of the hotel building, located not far distant from the areaway in question. Davidson testified that on the day of the accident, July 11, 1946, plaintiff and Douglas came to him to inquire whether they could take the pipes up on the elevator; that he told them it could not be done without cutting the pipe, whereupon plaintiff told him that the pipes had been sold, that the value was in their length, and he had to get them out without cutting them. Davidson did not testify that he told plaintiff he could not use the areaway or the tunnel or prohibited him in any way from doing so. He testified that he "thought" Douglas told Ellguth in his presence that the use of the tunnel would be very dangerous, but Douglas nowhere in his testimony claims to have made any such statement. Douglas merely said : "I advised him it is not good policy to take pipes under the theatre because the theatre don't belong to us." Also, in the presence of plaintiff, when Davidson was asked whether the pipes could be taken on the elevator, Davidson replied: "It is not good policy to do that." There is not one word of testimony on the part of Davidson or Douglas that they refused to allow plaintiff to go through the passageway or tunnel. Plaintiff was anxious to ascertain whether it would be feasible to take the material through the tunnel, and it was clearly for that purpose that Douglas led him through the passageway. Douglas testified that plaintiff insisted on ascertaining whether the pipes and timber could be taken through the tunnel and removed to the street or alley; that he thereupon led plaintiff through this areaway in question to the tunnel, and that plaintiff had his hand or arm on his shoulder as they were walking through the areaway. Plaintiff testified in connection with this incident that Douglas said, "Come on, follow me, I will show you." Douglas further testified that neither of them had any

591

flashlight, and that suddenly plaintiff yelled something about his eye. It appears that some metal object or hook, protruding in this areaway, struck plaintiff's eye, injuring the eyeball, destroying all vision, and thereafter plaintiff became totally blind.

 If plaintiff was a licensee and not an invitee, the rule is well settled that defendant owed him no duty except not to wantonly and wilfully injure him, but if, under the facts, he was an invitee, then defendant owed him the duty to exercise reasonable care and caution in keeping the area or corridor in question reasonably safe for use by plaintiff. The test as to when one is an invitee or licensee is whether one comes by the owner's invitation to transact business in which the parties are mutually interested. *Milauskis v. Terminal Ry. Ass'n of St. Louis,* 286 Ill. 547, 555; *Pauckner v. Wakem,* 231 Ill. 276; *Jones v. 20 North Wacker Drive Bldg. Corp.,* 332 Ill. App. 382, 385. If a person is upon the premises of the owner by an invitation, express or implied, and not by mere permission, then such owner owes him a duty to exercise ordinary care to keep the premises in a reasonably safe condition. *Jones v. 20 North Wacker Drive Bldg. Corp., supra.*

 It depends upon the circumstances in each particular case whether the invitation can be held to extend to the place where the injury occurred. The holding in *McNamara v. MacLean,* 302 Mass. 428, 19 N. E. (2d) 544, upon the facts there involved, is directly contrary to the holding of our Supreme Court in *John Spry Lumber Co. v. Duggan,* 182 Ill. 218, and *Pauckner v. Wakem, supra. Connole v. Floyd Plant Food Co.* (Mo. App.), 96 S. W. (2d) 655, and like cases cited, upon the facts are not applicable. In the *Spry* case, plaintiff was engaged in unloading lumber from a boat by passing the lumber from the boat to defendant's employees upon the dock owned and con-

592

trolled by defendant. Plaintiff was an employee of an independent contractor. While so engaged in his work, plaintiff was obliged to respond to a call from nature and proceeded from the boat to a water closet upon the dock owned by defendant. It does not appear from the opinion whether there were any toilet facilities on the boat. When plaintiff left the boat and walked upon defendant's dock in the direction of the water closet, some lumber, which had been negligently piled up by defendant's employees, fell upon plaintiff and injured him. The court there held (p. 222):

"Finally, counsel for appellant contend that if appellee was an employee of Hunt, the appellant owed him no duty in the matter of keeping the surroundings upon the dock reasonably safe. In other words, it is argued that he was a mere licensee upon the premises of appellant. To this we cannot assent. Appellee was not a mere licensee, enjoying a license subject to its attendant perils. He was not upon the premises merely for his own convenience and pleasure. On the contrary, there was a relationship between him and appellant, arising from the contract between appellant and his employer, Hunt. The class of cases, many of which are cited, wherein one visiting premises for his own pleasure or convenience is held to accept all perils accompanying the license, do not apply here. When appellant, for the purposes of his own business, contracted with Hunt to bring appellee and others to unload its vessel, it thereby not only invited, but contracted for, the presence of appellee, and became obligated to exercise reasonable care for his safety while upon his premises. (*Samuelson v. Cleveland*, 49 Mich. 164; *Drennan v. Grady*, 167 Mass. 415; *Evansville v. Griffin*, 100 Ind. 221: *Powers v. Harlow*, 53 Mich. 507; *Welch v. McCallister*, 15 Mo. App. 492; *Bennett v. Railroad Co.* 102 U. S. 577; *Indermauer v. Dawes*, 1 L. R. C. P. 274; *Heaven v.*

*Pender,* 11 L. R. Q. B. Div. 503.) The jury could not have properly found, from the evidence, that the appellee was merely a licensee.''

Again, in *Pauckner v. Wakem, supra,* upon the question of contributory negligence, it was argued that if it was too dark for him to see, he should not have gone along a dark and unknown passway without a light. Upon that question, the court said:

''Under the evidence it was a proper question for the jury to determine whether appellee was guilty of contributory negligence.''

██ The interest of the defendant in the instant case was to have the refrigerators dismantled and removed. The interest of the plaintiff was to do the dismantling and remove the material. Since there was no prohibition directed to plaintiff by defendant's authorized agents against going through the areaway for the purpose of determining whether the material could be taken through for removal to the street or alley, and since the authorized agent of defendant undisputably led plaintiff through the areaway in question, it is clear to us that the undertaking of plaintiff, at the time of the accident in question, was in connection with the business in which the parties were mutually interested. When led by defendant's witness Douglas, through the areaway, it was clearly an invitation to plaintiff to use that areaway. Upon the admitted facts, plaintiff must be regarded, as a matter of law, an invitee and not a licensee or trespasser.

██ Instruction No. 10, complained of, reads:

''The jury is instructed that plaintiff, in his complaint filed in this case, has charged that the defendant by and through its agent and servant negligently did one or more of the following acts which were the proximate cause of injuries sustained by plaintiff:

a. Allowed the same areaway into which the plaintiff was being led to be and remain dark and unlighted, thereby making it dangerous and unsafe for persons unfamiliar with said areaway to walk therein.

b. Allowed certain obstructions and protrusions to be and remain in said dark and unlighted areaway, thereby making it dangerous and unsafe for persons to walk therein, in that such persons would be liable to collide with said obstructions or protrusions,

c. Failed to warn plaintiff of said obstructions and protrusions in said dark and unlighted areaway, although the said defendant, by and through its agents and servants knew or in the exercise of ordinary care should have known of the presence of the said obstructions and protrusions.

The foregoing are allegations of the plaintiff's complaint and are denied by defendant in its answer, and such answer further denies that plaintiff was in the exercise of ordinary care for his own safety.

And if you find, from a preponderance of the evidence and under the instructions of the court that the incident in question and the injuries, if any, were proximately caused in the manner charged in the complaint as above set forth, and provided you further find that just prior to and at the time and place of the happening of the incident in question, plaintiff was in the exercise of due care and caution for his own safety, then in such case you should find the defendant guilty.''

The complaint about this instruction is that it assumes plaintiff is an invitee, and thus invades the province of the jury to determine the fact. The instruction defines the issues in the case, not only by setting forth

the allegations of negligence in the complaint, but that defendant by its answer denied the same. It will be observed that the instruction requires that plaintiff prove the allegations in the complaint together with the allegation that plaintiff was "being led." Upon the admitted facts, as we have noted, plaintiff was an invitee. There is, therefore, no sound basis for the attack upon this instruction, and we regard it without error.

██ Instruction No. 13 stated the rule of reasonable care and caution required of the defendant in keeping the areaway or corridor in question in a reasonably well lighted condition and in a reasonably safe condition for travel by persons "lawfully in said premises." It is not subject to the attack made, that this instruction also assumes the relationship of invitee and takes from the jury the determination of that question. The instruction limits it to persons lawfully upon the premises. It must be considered together with the other instructions and, as pointed out, plaintiff unquestionably was an invitee and, therefore, was lawfully upon the premises.

█ Instruction No. 7, complained of, is a stock instruction as to the competency of plaintiff as a witness in his own behalf, and that the jury should consider his testimony in connection with all of the evidence in the case and give it such credit as the jury believes it entitled to from all the facts and circumstances in evidence. Instruction No. 8, given on behalf of defendant, referred to the fact that plaintiff had a right to testify in his own behalf, but the jury should consider his interest in the result of the suit in determining what credence should be given his testimony. Instruction No. 9, given for defendant, directed the jury that it had no right to disregard the testimony of any unimpeached witness on behalf of defendant, simply because such witness was an employee of de-

fendant, but should apply the same test to their testimony as any other witness. The instructions, when read together, leave no basis for the attack leveled against instruction No. 7.

 Certainly, upon this record, we cannot say that plaintiff, as a matter of law, was guilty of contributory negligence. It was purely a question of fact for the jury, and the special interrogatory answered in the affirmative by the jury, which we do not regard against the manifest weight of the evidence, settled that question.

 We cannot have serious regard for the contention that the verdict is excessive. Plaintiff will be obliged to spend the rest of his life in total darkness and require the aid and protection of a guide. There can be no greater tragedy befall any person than blindness. This, considered with the showing of plaintiff's previous condition of good health; his earning capacity; his actual damages, approximately $3,000; his confinement in the hospital for three weeks; and that at the time of the trial, he was living with his daughter but required the services of a woman to take care of him, who was paid $7.50 a day for such services, would not justify us in saying the damages are excessive. *Howard v. Baltimore & Ohio Chicago Terminal R. Co.,* 327 Ill. App. 83; *Kavale v. Morton Salt Co.,* 242 Ill. App. 205, affirmed 329 Ill. 445. We said in *Ford v. Friel,* 330 Ill. App. 136, at p. 140:

"In no case will the scales of justice balance, when injuries, pain and suffering are placed upon the one side and monetary compensation upon the other. Her earning capacity has been seriously reduced. Her ability to do the type of work she was accustomed to has been impaired. Defendants have no right to accelerate her inability to work by injury inflicted through their

negligence. She is entitled to have her inability to work develop through the normal channel of advancing years.''

Defendant had a fair trial, and the judgment is affirmed.

*Affirmed.*

TUOHY, P. J., concurs.

NIEMEYER, J., dissents. The majority opinion holds as a matter of law that plaintiff was an invitee and not a licensee at the time and place of his injury. The distinction between a licensee and an invitee upon the premises of another is well defined and *"turns on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming."* (Emphasis added.) *Pauckner v. Wakem,* 231 Ill. 276, 279, 280; *Milauskis v. Terminal Ry. Ass'n of St. Louis,* 286 Ill. 547, 555; *Jones v. 20 North Wacker Drive Bldg. Corp.,* 332 Ill. App. 382, 385. A licensee is on the premises in the pursuit or furtherance of his own business, pleasure or convenience. An invitee is there for a purpose connected with the business in which the occupant is engaged or which he permits to be carried on. A licensee is generally on the premises merely by permission or acquiescence. He may be there by invitation of the owner (*Wilson v. Goodrich,* 218 Iowa 462, 467), who personally conducts him over the premises (*Connole v. Floyd Plant Food Co.* (Mo. App.), 96 S. W. (2d) 655), or points out the way the visitor should go in furtherance of his own business, pleasure or convenience (*McNamara v. MacLean,* 302 Mass. 428, 19 N. E. (2d) 544). An invitee is upon the premises by invitation, express or implied. This invitation extends only to that portion of the premises reasonably embraced within the object of the invitee's visit. *Pauckner v. Wakem, supra.* In *Lewis v. Lerman Bros.,* 277 Ky. 334, 126 S. W. (2d) 461, the court quotes

598

with approval from *Keeran v. Spurgeon Mercantile Co.,* 194 Iowa 1240, as follows:

"The invitation, expressed or implied, to conduct business upon the premises, is an *invitation to use the premises in the ordinary and usual manner in which business is conducted thereon,* and it does not render the owner or occupant of the premises liable for negligence where the invitee is using a portion of the premises to which the invitation has not been extended, either expressly or impliedly, and which the occupant would not reasonably expect the invitee to use in connection with the conduct of business on said premises." (Emphasis added.)

When an invitee steps beyond the bounds of his invitation he becomes a mere licensee. *Brett v. Century Petroleums, Inc.,* 302 Ill. App. 99; *Wilson v. Goodrich, supra; McNamara v. MacLean, supra; Malolepszy v. Central Market, Inc.,* 142 Neb. 570; *McGenty v. John A. Stephenson & Co.,* 218 Minn. 311; *Napier v. First Congregational Church of Portland,* 157 Ore. 110, 70 P. (2d) 43; *Meeks v. Cowart* (Tex Civ. App.), 84 S. W. (2d) 845; *Smith v. Trimble,* 111 Ky. 861.

The status of the plaintiff as an invitee or licensee must be determined at the time and place of his injuries. In February 1946, he entered into a contract to dismantle a cooler in the basement of defendant's hotel. The terms of the contract are not shown, but the parties agree that plaintiff was entitled to the materials salvaged. According to plaintiff the cooler was in a storage room, about 30 by 30 feet, adjacent to a commissary. Freight elevators were installed and operated right by the commissary. About 125 feet west from the cooler, and beyond the elevators, toward the end of the building, was an unlighted passageway in which plaintiff was injured. Defendant's witnesses say that this passageway (its length is not shown) led

to a tunnel, about 18 feet long, which ran under an alley and connected the basement of the hotel with the basement of the Blackstone Theatre. Defendant did not own the theatre. There is no evidence as to who owned or controlled the tunnel or how much, if any, of the tunnel was on defendant's property. At one time the tunnel had been used as a passageway between the two buildings to go back and forth with meat, equipment and material which had been placed or stored there. In the month of plaintiff's injury it was used only by defendant's superintendent of maintenance, and engineer, to go over and check the vacuum pumps which supplied the theatre with heat and steam, presumably furnished by defendant. There is no evidence that at any time during which plaintiff was upon defendant's premises in connection with the dismantling of the cooler the tunnel was used for any other purpose, or that defendant had any other or further rights in the tunnel than using it for the limited purpose of checking the vacuum pumps.

The work of dismantling the cooler was commenced in June. Plaintiff employed two or three men and most of the time was at the job some part of the day. On July 11, 1946, the workers had torn down about half of the cooler and were ready to move it out. Among the materials salvaged were timbers and iron pipes 14 to 18 feet long, which plaintiff had sold. These timbers and pipes were too long to be taken out by the freight elevators and were worth more in the longer lengths than if cut into shorter lengths for removal by the elevators. Plaintiff testified that he asked Douglas, defendant's engineer, how to get the materials out because the elevator was too short and too low, and that Douglas said, "Come on, follow me, I will show you"; that Douglas went ahead and plaintiff followed him into a dark entrance where he was injured; that he didn't know where the passageway led; that it was

600

supposed to lead out some place under the sidewalk where he could pull up the stuff. Douglas testified that plaintiff said, ''I would like to see the opening under the theatre so I can take the pipes out''; that he, Douglas, advised plaintiff that it was not good policy to take the pipes out under the theatre because the theatre didn't belong to defendant; that plaintiff insisted and said he wanted to use the area under the theatre and didn't want to use the freight elevator of the hotel because he didn't want to cut the pipes; that he, Douglas, then took plaintiff to the office of Davidson, superintendent of maintenance, and asked him if it would be all right to take the pipes out that way (under the theatre), and Davidson said it was not good policy to do that; that plaintiff might as well cut the pipes in two, and plaintiff said, ''I got these sold and I can't cut them''; that after this conversation plaintiff insisted that we go under the theatre and see the opening to take the pipes out; that he started to take plaintiff over. Davidson testified that plaintiff and Douglas came in and wanted to know if they couldn't take the pipes up the elevators; that he told them the pipes had to be cut, that they couldn't take the pipes up without cutting them; that plaintiff said he wouldn't cut them and that he had to get them out without cutting them; that he thinks Douglas said something about the use of the entrance to the tunnel, and that it would be very dangerous. Plaintiff does not deny that this conversation was had or that Douglas and Davidson made the statements claimed.

Plaintiff's rights on defendant's premises were fixed by his contract of February 1946. Plaintiff had the burden of proof, yet the record does not show the terms of this contract or whether it was written or oral. The dismantling of the cooler necessarily meant tearing it down, separating it into parts. Plaintiff's right to salvage material is conceded, but there is no evidence

601

of any discussion between the parties as to how the pipes were to be removed, until the day of plaintiff's injury. In the absence of evidence to the contrary we must hold that the parties contracted with knowledge of the facilities existing on defendant's premises for the removal of all materials, salvage or waste, resulting from the dismantling process, and that it was the intention of the parties that such materials be removed by these facilities—the freight elevators maintained and operated by defendant—even though it became necessary to cut the material to a size making such removal possible. There is no basis for any inference that either party intended or even considered removing such material over the property of a third person—the theatre—when entering into the contract. So far as the evidence shows, material had never been removed in that manner, and neither plaintiff nor defendant had any right to use the theatre property for that purpose. Plaintiff did not know where the passageway led. His statement that ''it was supposed to lead out some place under the sidewalk where I could pull up the stuff,'' is a conclusion without probative value. The evidence does not show upon what information this supposition was based, or when or from whom plaintiff received the information on which he based the supposition. There is no evidence that the passageway did in fact lead to a place under the sidewalk where plaintiff could pull up the stuff.

Plaintiff was unquestionably an invitee on the premises for the purpose of dismantling the cooler and *removing the material by the means customarily employed by defendant*. Plaintiff and defendant were mutually interested in removing the pipes, but *only the plaintiff was interested in removing them without cutting*. His attempted exploration of the passageway, tunnel and area under the theatre was in furtherance of

602

his own business—the procuring of a higher price for the pipes. To achieve this end he attempted to find a new path over which to remove the material from the basement: to use the passageway, tunnel and theatre property and ignore the freight elevators on defendant's property. So far as the evidence discloses, this had never been done before. In so doing plaintiff stepped beyond the bounds of his invitation and became, at best, a mere licensee. *Brett v. Century Petroleums, Inc., supra; Meeks v. Cowart, supra; Wilson v. Goodrich, supra; McNamara v. MacLean, supra; Malolepszy v. Central Market, Inc., supra; McGenty v. John A. Stephenson & Co., supra; Napier v. First Congregational Church of Portland, supra; Smith v. Trimble, supra.* Plaintiff's position is not aided by the fact that Douglas was leading the way. Douglas was acting at the request of plaintiff. His authority to act, after the insistence of Davidson, his superior, that the pipes should be cut so that they could be taken up the elevator, may be questioned. I prefer, however, to base my opinion on the status of plaintiff. In *McNamara v. MacLean, supra,* plaintiff entered defendant's store as a customer and asked permission to use the toilet; defendant gave permission but said the toilet was in the cellar and was for the use of employees; defendant lifted a hatch cover or trap door that covered a steep narrow stairway, unlighted by any artificial light, that led to the cellar; looking down, plaintiff saw what she described as a dark hole; defendant told plaintiff to be careful in going down and to put her hand on the rail; plaintiff, who had never seen the stairway before, started down, with her hand on the railing, but owing to the extreme narrowness of the steps (not pointed out to plaintiff), she lost her balance on the third step and fell downstairs. In sustaining the action of the trial court in directing a verdict for defendant, the reviewing court said:

"Although the plaintiff was an invitee in the store, on the evidence she was a bare licensee on the stairway. (Citing cases.) The presence of the defendant, and her express permission to use the toilet, gave the plaintiff no higher standing."

This case is not inconsistent with *John Spry Lumber Co. v. Duggan,* 182 Ill. 218, cited in the majority opinion. In that case no question of an unusual use of the premises was involved. Plaintiff was on the premises engaged in unloading a boat. He was going to the water closet provided for such workmen. As stated in the opinion: "It is clear, from the evidence, that the course which he pursued in attempting to reach the closet was the only direct route which could be pursued by him and be safe." In the *McNamara* case it was not shown that toilet facilities had been provided for customers. Large stores usually provide such facilities; smaller stores do not, the customer being upon the premises but a short time. The use of the employees' toilet by a customer was an unusual use of the premises. In *Connole v. Floyd Plant Food Co., supra,* the plaintiff was injured while touring the Illinois plant of defendant in company with his son-in-law, Sargent, an officer of the defendant having supervisory authority over the plant and the superior of Edwards, the superintendent; plaintiff had no business with defendant, but went with Sargent and Edwards on their tour of inspection at the invitation of Sargent and to avoid waiting in the automobile until Sargent had completed his duties; his vision was impaired by cataracts; both Sargent and Edwards knew of this defect; plaintiff fell from a dimly lighted platform on which he, Sargent and Edwards were standing. In denying recovery to plaintiff the court said:

" . . . a licensee is one who goes upon the property of another, either by express invitation or with his

implied acquiescence, not on any business of the owner or occupant, but solely in pursuit either of the licensee's own business, pleasure or convenience.''

Upon the uncontradicted evidence plaintiff herein was, at best, a mere licensee at the time and place of the accident, and defendant was only liable for his wilful and wanton injury. The court should have directed a verdict for defendant, or entered judgment for it notwithstanding the verdict.

If plaintiff's status on the premises of defendant should be considered a question of fact—the most favorable position plaintiff can claim—the judgment must be reversed because of the error in giving instructions 10 and 13. These instructions assume that plaintiff was an invitee. No instruction submitted to the jury the determination of plaintiff's status. Instruction No. 10 directed a verdict upon proof of the negligence charged in the complaint, without requiring the jury to find facts making plaintiff an invitee. This is reversible error. Instruction No. 13 stated the duty of an owner to exercise reasonable care for the safety of persons lawfully on the premises. This is an erroneous statement of the law, as this duty is not owed to a licensee, who is a person lawfully on the premises.

Whether plaintiff's status be a question of law or of fact, the judgment cannot be affirmed.