(No. 5163—

CLIFFORD ELMORE, Claimant, vs. TEACHERS COLLEGE BOARD, Respondent.

*Opinion filed January 10, 1967.*

COSTIGAN and WOLLRAB, Attorneys for Claimant.

DUNN, DUNN, BRADY, GOEBEL, ULBRICH and HAYES, Attorneys for Respondent.

PEZMAN, J.

This is an action brought by claimant, Clifford Elmore, against respondent, Teachers College Board, to recover damages for personal injuries, which he sustained on June 24, 1963, when the end of a packing crate struck him in the legs, as he was lifting open a garage door.

The facts concerning the happening of the accident, as shown by the evidence, are as follows: Claimant, a fifty-seven year old ceramic tile and marble contractor, had a subcontract to tile two swimming pools on the campus of Illinois State University, Normal, Illinois.

Respondent, through its agents and employees, gave claimant permission to store his tile in one stall of a four stall garage building, which was owned by the University, and located on its property approximately one block from one of the jobs. Each stall of this garage

opened onto a street by means of its own individual door, a one piece, solid wooden door without glass. It was of the type, which did not bend or roll, but rather pulled out and up from the bottom. When raised, it was stored overhead. The stalls, each ten feet wide and approximately fifteen to sixteen feet deep, were not partitioned. The building on the inside was open from one end to the other. The University assigned claimant the second stall from the south end of the building. In the southernmost stall was a large crate, approximately six feet high, five or six feet wide, and ten feet deep. It was pushed into the stall just far enough to clear the door by about three feet. The crate was made from rough framing lumber, two by fours framed, and other siding material, which was one inch heavy crating lumber, and was skidded on six by sixes.

There were interior locking devices for the four garage doors, which consisted of horizontal rods placed towards the bottom of each door, and fitted into catches in the door frames. The only exterior locking device was a clasp for a padlock on the outside of the door of the southernmost stall. After claimant unloaded his truckload of tile in the garage he locked the three north doors, which included his own, from the inside, and put a padlock on the clasp on the southernmost door. The padlock had two keys. He gave one to Robert Dietsch, Superintendent of Grounds at the University, and retained the second key.

When claimant or his employees withdrew tiles from their assigned stall for use in the pool construction, their practice was to unlock the padlock on the south door, enter the garage through the south door, walk past the crate to the second stall, open the second stall door from the inside, back their truck up to the door and load up

the material they wanted. When the loading was completed, they would close the second stall door, fasten it from the inside, leave the building by the southernmost stall, and close and padlock the southernmost stall door from the outside. This they did once or twice a week.

The crate in the southernmost stall contained an ozalid machine. Several days before the accident Dr. Charles Porter, Chairman of the Department of Industrial Education at Illinois State University, instructed an employee of the University to pry open the front or west end of the crate, so that the machine's dimensions could be determined. After the crate was opened, Dr. Porter, together with Dr. Talkington and another person, went to the garage and measured the machine.

The record shows that the inside fastening devices used by claimant to lock the three northerly stall doors from the inside were actually ineffective, and had been so for some time. The record further shows that claimant was unaware of this situation. Even when fastened on the inside, the door to claimant's stall could be opened from the outside by giving it a strong jerk. On the occasion when Dr. Porter and Dr. Talkington wanted access to the south stall to examine the crate, they merely jerked open the door of claimant's stall, and entered the garage through claimant's stall. Claimant testified that he was last in the garage prior to the incident in litigation on June 20 or 21, 1963, and that at that time the crate was intact. Dr. Porter testified that he and his men did not nail the crate back together again, and that, when they left, the crate was anywhere from one to two feet from the door.

On Monday, June 24, 1963, at approximately 3:00 P.M., claimant went to the garage to get some materials.

Claimant testified that, as he opened the southernmost door of the garage, as he had done on numerous occasions before, the end of the crate fell against him injuring his legs and feet. As a result of his injuries, claimant had out of pocket medical expenses of $80.80, and he was forced to hire a foreman for five weeks at a cost of $160.00 per week. The only permanent injury sustained by claimant is a numbness and swelling of the left leg when he has been working all day. As a result of the accident, he wears a shoe one size larger on his left foot.

The first question to be decided is the legal status of claimant at the time and place of the accident. If claimant was a licensee and not an invitee, the rule is well settled that respondent owed him no duty except not to wantonly or wilfully injure him. However, if under the facts claimant was an invitee, then respondent owed him the duty to exercise reasonable care and caution in keeping the garage area reasonably safe for use by claimant. The test as to when one is an invitee or licensee is whether one comes by the owner's invitation to transact business in which the parties are mutually interested. *Ellguth vs. Blackstone Hotel, Inc.*, 340 Ill. App. 587; 92 N.E. 2d 502 (1950) ; *Milauskis vs. The Terminal Railroad Association of St. Louis*, 286 Ill. 547; 122 N.E. 78 (1919) ; *Pauckner vs. Wakem, et al*, 231 Ill. 276; 83 N.E. 202 (1907).

If a person is upon the premises of the owner by invitation, express or implied, and not by mere permission, then such person is an invitee, and the owner owes him the duty to exercise ordinary care to keep the premises in a reasonably safe condition. *Ellguth vs. Blackstone Hotel, Inc.*, 340 Ill. App. 587; 92 N.E. 2d 502 (1950) ; *Jones vs. 20 North Wacker Drive Bldg. Corp., et al*, 332 Ill. App. 382; 75 N.E. 2d 400 (1947).

A licensee is one who enters upon the premises of another by permission for his own purposes. *Kapka vs. Urbaszewski*, 47 Ill. App. 2d 321; 198 N.E. 2d 569 (1964).

When respondent contracted with claimant to tile the two swimming pools, respondent not only invited but contracted for the presence of claimant. The facts in this case clearly support the contention of claimant that he had the status of an invitee at the time and place of the accident. Respondent's contention that claimant had exceeded the bounds of his invitation when he used the southern door of the garage as an entrance way to the area, which he used for storing tile, is rejected by the Court. Whether the invitation can be held to extend to the place where the injury actually occurred depends upon the circumstances in each particular case. *Ellguth vs. Blackstone Hotel, Inc.*, 340 Ill. App. 587; 92 N.E. 2d 502 (1950); *Jones vs. 20 North Wacker Drive Bldg. Corp., et al*, 332 Ill. App. 382; 75 N.E. 2d 400 (1947).

An invitation extends to any portion of the premises, which the owner may reasonably anticipate the invitee to use in connection with the conduct of the business on the premises. The case of *Pauckner vs. Wakem, Et Al*, 231 Ill. 276; 83 N.E. 202 (1907), held that the invitation of a warehouseman to enter the warehouse to remove goods is broad enough to include all the space occupied by the goods, together with the necessary passways in and out of the warehouse, and covers a passway in front of an unguarded elevator shaft near the goods, even though a person familiar with the premises might get to the goods through another passway, and thereby avoid passing the elevator shaft.

In the instant case, the record indicates that one of respondent's agents instructed claimant to store his

materials in the garage. Therefore, claimant had the right to store his materials in this garage area in the assigned space, and quite naturally had the right to have access to said materials. It is the opinion of this Court that claimant did not exceed the bounds of respondent's invitation to him when he elected to enter the garage through the door adjacent to the stall, which was assigned to him, instead of using the door opening directly into his stall. Testimony divulges that claimant chose to use this particular door as an entrance and exit because there were no exterior locking devices on any other door.

The final question to be decided concerns the negligence of respondent and the freedom from contributory negligence on the part of claimant. With respect to the negligence of respondent, it appears from the record that the crate in question was owned by respondent. The evidence further establishes that certain representatives of respondent entered the garage in question, and pried the crate open so that they could observe the machine inside. The evidence indicates that after respondent's employees looked at the machinery, they did not renail or secure the west end of the crate. When claimant opened the garage door he was injured when the west end of the crate fell against his legs. From the facts, as presented, we presume that the west end of the crate had been leaning against the garage door, and fell on claimant when the door was opened.

It appears from the record that respondent's agents were responsible for the creation of the dangerous condition, which caused the injury. Evidence indicates that this particular crate was in place and properly secured four days before the accident. Some time between June 20, 1963, and June 24, 1963, the date of the accident,

respondent's agents opened the crate, including the west end of the crate, and failed to renail or secure the crate before leaving the garage. To allow the crate to remain in an unsecured condition, knowing that other persons would or could use the garage building, constitutes negligence.

Respondent, under the theory of respondeat superior, is charged with the knowledge of, and the acts of its employees, acting within the scope of their employment. Clearly, respondent's agents were acting within the scope of their employment when they opened the crate. Accordingly, their failure to secure the crate end after the inspection, and allowing it to be in a precarious or dangerous condition immediately prior to the occurrence, was negligence chargeable to respondent. It is equally clear that claimant did nothing that in any way proximately contributed to or caused his injury and damage. The accident occurred when claimant raised the garage door, and the crate end fell out of the door striking him on the legs and feet. Testimony of claimant established the weight of the falling crate at approximately 300 to 400 lbs. Claimant had raised the door in this particular fashion, and walked by the crate housing the printing machine on numerous occasions, and on each occasion the crate was in a solid and substantial state. Claimant had no notice or knowledge that a dangerous condition existed on the other side of the garage door when he opened it. He did only what he had done on previous occasions, and only what might have been expected of a reasonably careful and prudent man.

Claimant is hereby awarded the sum of $2,410.80.