DR. J. W. WILSON, Appellant, v. M. J. GOODRICH, Appellee.

No. 42098.

JANUARY 16, 1934.

REHEARING DENIED JUNE 23, 1934.

Alex Holmes, for appellant.

Kenline, Roedell, Hoffmann & Tierney, for appellee.

ANDERSON, J.—This is an action for damages for personal injury resulting to plaintiff by reason of falling into an elevator shaft. The plaintiff is a physician and surgeon in Strawberry Point, Clayton county, Iowa. The defendant is engaged in the business of buying poultry and eggs from farmers and merchants and reconditioning them for the eastern market. He has been engaged in this business at Strawberry Point since 1913. He employed about forty-five people in his produce plant, and carried compensation insurance. The plaintiff's office was almost immediately across the street south from the produce plant. During the four years next preceding the accident involved in this case he had treated some twenty-five of the defendant's employees for accidents and infections due to their work in the produce plant. Other physicians had also treated employees of the defendant. The plaintiff was not a regular physician employed by the defendant. When an injury occurred or an infection developed, the afflicted employee selected his own doctor, who was always paid by the company carrying the compensation insurance. The defendant had nothing to do with the selection or payment of any of the doctors. At the time of the accident the plaintiff had been treating two of the defendant's employees for infected hands resulting from chicken picking operations in the plant. These employees had gone to the plaintiff voluntarily and without any suggestion or direction from the defendant. On the morning of the accident to plaintiff which occurred on the 29th day of June, 1931, the plaintiff called at the office of the defendant in the produce building for the purpose of obtaining blanks to

make reports to the insurance company upon the cases of two employees he had been treating. Usually these blanks were furnished by the defendant to the employee, and the employee took them to the doctor's office. This was apparently the first occasion upon which the doctor called at the plant for these blanks. He claims that the reports were overdue and that he had phoned to the office on two prior occasions asking that they send the blanks over to him. It was no part of the defendant's business or duty to furnish the blanks for the doctor's reports, but he had done so in some instances in the past. After securing the blanks from the office, he claims he asked a lady secretary if the two men were working, and that she told him they were working back in the picking room. He then left the office and, as he claims, started back through the produce building toward the picking room to interview the men and obtain some information from them in order to complete his reports to the insurance company. Nothing was said in the office by the doctor that he desired or that it was necessary for him to interview the men or that he was going back to see them. He claims that on his way back through the building to the picking room he walked into an open, unguarded, and unlighted elevator shaft and fell eight feet to the floor below and received serious injury. The building in question is approximately forty feet wide and two hundred feet long. It faces south upon one of the streets of the city, extending north practically two hundred feet. The main entrance to the building is near the center on the south, and immediately inside of the entrance and to the right are the offices of the defendant. The main entrance opens into a workroom some forty feet long and about twenty-five feet wide. North of the office rooms on the east side of the building is a storeroom and engine room. Almost directly north from the main entrance to the building is a sliding door five feet wide which opens into another workroom about eighteen feet wide and twenty-eight feet long. North of this workroom and on the west side of the building is what is known as a weighroom about twenty-eight feet long and fifteen feet wide. There are two folding doors each two feet wide opening from the workroom immediately north into the weighroom, and approximately in the northeast corner of the weighroom is an elevator shaft six feet square extending from the basement of the building to the second floor. This elevator shaft is equipped with sliding gate on the south side adjacent to the weighroom, and with sliding gate and folding doors on the north side. Immediately adja-

cent to the elevator shaft on the west, and in the northwesterly corner of the weighroom, is a sliding door about five feet wide, opening into the picking room. Immediately east from the weighroom is a large storeroom, and north of that, and immediately east of the picking room, is another large room also used for storage purposes. Between the two last-described rooms is a door five feet wide and from the last-described room is a six-foot opening to the picking room. The weighroom has two windows in the west wall and a sliding door six feet wide where poultry and eggs are delivered to the plant by farmers and others selling their produce to the defendant. This large door is inclosed in the wintertime by sliding solid wood doors; in the summertime it is inclosed with a sliding door made out of chicken wire for the purpose of permitting light to enter the weighroom and prevent chickens from escaping therefrom. Immediately in front or south of the south elevator shaft opening in the weighroom, there was suspended from the ceiling a twenty-five watt electric light, which was lighted continually. In the workroom immediately south of the weighroom, on the morning of the accident the undisputed testimony shows there were piles of lumber, egg cases, and chicken crate material extending from the west wall the entire width of the weighroom and as high as the ceiling. Two or three feet from the south partition wall of the weighroom, an opening or alleyway some three feet wide and running east and west had been left for the convenience of the workmen in going to and from the weighroom. There was an alley or passageway some six or eight feet wide running north from near the front of the building and along the east wall of the weighroom to the five-foot opening into the back storage room, and this alley or passageway was used by the workmen and others in going from the front of the building back to the picking room. This alley or passageway was well lighted by natural light coming through several windows on the east side of the building, and near the opening between the two northerly storerooms there was an electric light suspended from the ceiling; and immediately north of this and at the entrance to the picking room was another electric light suspended from the ceiling which was always lighted during the daytime. At the time of the accident there were about twenty-five men working in the picking room and no one was working in the weighroom. When the doctor came out of the office on the morning of the accident, there was apparently presented to him a wide and well-lighted passageway

by which he could have reached the picking room. This was the usual and ordinary way used by all of the workmen and others who desired to go from the front of the building to the picking room in the rear. The other way which the doctor claims he followed was through the narrow three-foot alley between the piles of lumber to the west and then north through a small two-foot door into the weighroom, and then north to the five-foot door immediately west of the elevator shaft and leading into the picking room. The doctor claims that when he passed through the first opening after leaving the office he saw what he thought was a light in the picking room shining through a partially open door. He claims that he walked towards this light, and that it developed that the light was shining through the elevator shaft through the partially open doors on the north side; that he did not know that the elevator shaft was there, and that he walked toward the light and fell into the shaft. From the plan of the ground floor of the produce building which is introduced in evidence, it appears that it was physically impossible for the doctor to have seen the lights shining through the elevator shaft as he claims, until, at least, he had entered the weighroom. The lumber and material piled immediately south of the door leading into the weighroom would have prevented any one from seeing any lights at the north end of the weighroom. The undisputed evidence is that there were some thirty electric lights burning in the picking room, and that the five-foot door immediately adjacent to the elevator shaft and leading from the weighroom into the picking room was open at the time of the accident. The doctor claims there was no gate or obstruction on the south side of the elevator shaft; that the weighroom was not well lighted, and that he thought he was going through a door into the picking room, but stepped into and fell down the elevator shaft. Just how the accident occurred under the circumstances and situation is difficult to conjecture. Assuming that the defendant was negligent in the maintenance of the elevator and the elevator shaft, as alleged by plaintiff, we would be constrained to hold that the plaintiff was guilty of contributory negligence barring his recovery, under the undisputed record and physical facts. It is true, as appellant contends, that, generally, contributory negligence is a question for the jury, but under some circumstances it is the province of the court to determine whether or not contributory negligence barring a recovery is shown. In the instant case there is no serious conflict in the evidence as to what the plain-

tiff did and as to the physical facts and situation. Of course, if the conduct of the plaintiff was such that there might fairly be different opinions with respect to it, and one would honestly and reasonably say and believe his conduct was ordinarily prudent and careful, while another would contend it was not, then a jury question is presented.

When, however, the facts and circumstances are clear and undisputed, and the existence of contributory negligence is apparent to all fair-minded and reasonable men, and that such is the only reasonable conclusion that may be drawn from the established facts, then contributory negligence exists as a matter of law. Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N. W. 360; Barboe v. Sioux City Service Co., 205 Iowa 1074, 215 N. W. 740; Perkins v. Schmit Construction Co., 215 Iowa 350, 245 N. W. 343; Rosenberg v. Des Moines R. R. Co., 213 Iowa 152, 238 N. W. 703; Dreier v. Mc-Dermott, 157 Iowa 726, 141 N. W. 315, 50 L. R. A. (N. S.) 566; Sutton v. Baking Co., 135 Iowa 390, 112 N. W. 836; Abraham v. Sioux City, 218 Iowa ......, 250 N. W. 461.

The plaintiff contends that he was an invitee in the defendant's place of business, and that as such the defendant owed him the duty of using reasonable and ordinary care in order to protect him from injury. The defendant claims that the doctor was a mere licensee, and that, even if he was or could be considered an invitee, such status ceased when he left the office of the defendant.

An invitee to a place of business is one who goes there, either at the express or implied invitation of the owner or occupant, on business of mutual interest to both, or in connection with the business of the owner; while a licensee is one who goes on the property of another, either by express invitation, or with implied acquiescence, solely in pursuit or furtherance of business, pleasure, or convenience of the licensee.

It is apparent from the record that the plaintiff was at most an invitee to the office of the defendant only, and, when he had completed his business there (his announced intention to procure the report blanks), and left the office, he lost that identity and became a mere licensee, to whom the defendant owed no duty other than to not wantonly or willfully cause him an injury. At the time the doctor left the defendant's office he did not announce his intention of interviewing his patients in the picking room. There was no acquiescence or consent on the part of the defendant that the plaintiff

go back into the plant, because the defendant did not know of the plaintiff's intention so to do. It does not appear that it was necessary for the doctor to go back into the building and interview the men. He could have done this in his own office immediately across the street from the produce plant and where the men went to him for treatment. It was not a part of the defendant's business or duty to prepare the reports in question or assist in doing so. It must be understood that the plaintiff's place of business was a private one, that is, it was not open to the public as a hotel, bank, or merchandise establishment. The plaintiff was injured at a place in the building where he was neither invited nor expected to be. He was a mere licensee and not entitled to protection as an invitee. Even if plaintiff was an invitee, the duty to him would not extend so far as to make the defendant liable for unsafe conditions existing on his premises in a place not intended for the reception of visitors or customers and where they were not expected or invited to go. Nelson v. Woolworth & Co., 211 Iowa 592, 231 N. W. 665. If the invitee goes for purposes of his own to some part of the premises other than which he was invited, he becomes a mere licensee. Peebles v. Company (C. C. A.) 15 F. (2d) 335; Bennett v. Butterfield, 112 Mich. 96, 70 N. W. 410. When an invitee steps beyond the limits of his invitation he becomes a mere licensee and must take the premises he then enters as he finds it. Menteer v. Company, 240 Mo. 177, 144 S. W. 833; Corbett v. Spanos, 37 Cal. App. 200, 173 P. 769; Ryerson v. Bathgate, 67 N. J. Law 337, 51 A. 708, 57 L. R. A. 307; Schmidt v. Hurd, 170 Minn. 322, 212 N. W. 903; Nelson v. Woolworth, supra; Wilmes v. R. Co., 175 Iowa 101, 156 N. W. 877, L. R. A. 1917F 1024; Knote v. City of Des Moines, 204 Iowa 948, 216 N. W. 52.

In this case the doctor, according to his own testimony, left a wide, open, direct passageway and went into a narrow alley and thus into the weighroom, which was not a place intended to be visited or used by the public generally. According to his own testimony, the weighroom was not well lighted, in fact he claims he could not see the elevator shaft. This circumstance should have been a warning to him in any event, and he should not have continued on his course, but for some unexplainable reason he did continue and walked into the open elevator shaft. Whether a licensee or not, under these circumstances, the defendant would not be liable for resulting injuries. We have held that:

"If one goes upon premises without invitation, express or implied, the owner or occupant thereof is under no duty to look out for his safety, and if he be injured through the negligence of the owner or occupant while there without lawful right, or as a bare licensee, no recovery can be had." Keeran v. Spurgeon, 194 Iowa 1240, 191 N. W. 99, 27 A. L. R. 579.

In further explanation of this thought we said in Printy v. Reimbold, 200 Iowa 541, 202 N. W. 122, 205 N. W. 211, 41 A. L. R. 1423:

"It is the universal rule that persons entering voluntarily upon the premises of another out of idle curiosity or for their own pleasure or advantage, take the same as they find them, and the owner or occupier thereof is bound only to avoid wanton or willful injury to them."

We might here make the notation that the plaintiff was not unfamiliar with the building. He had been there several times before, and had taken visitors through the building and back into the picking room.

The plaintiff in his brief goes quite extensively into the seriousness of plaintiff's injuries. The record discloses that the plaintiff was grievously and permanently injured, but a discussion of this feature of the case is not material to the issues presented on this appeal.

The plaintiff assigns many errors alleged to have been committed by the trial court in rulings upon the introduction of testimony. We have examined all of such alleged errors and are constrained to say that the trial court did err in some particulars in excluding evidence and restricting cross-examination, but we also conclude that such errors were not prejudicial and could not possibly have affected the final result in this case. We might also mention the fact that the abstract of the record prepared by the plaintiff-appellant, and the denial thereof, and the amendment thereto, prepared by the appellee, have been of no assistance to the court in reviewing the issues here presented, and we have been compelled to resort to the transcript, which has been certified to us, to obtain an understanding of the record.

At the close of all the testimony the defendant moved for a directed verdict, basing such motion upon many grounds, the material ones being:

1. That the plaintiff was a mere licensee, and the defendant owed him no duty.

2. That, even if the plaintiff was an invitee upon the premises of the defendant, he was not such invitee at the point where he was injured.

3. That, even if the plaintiff was an invitee and the defendant was negligent in the maintenance of its elevator and shaft, the plaintiff was guilty of contributory negligence which would bar his recovery.

4. That under all of the evidence the court could not permit a verdict for the plaintiff to stand if such verdict was returned by the jury.

This motion was sustained generally, and under the court's direction a verdict was returned for the defendant upon which judgment was entered against the plaintiff for costs. The plaintiff has appealed.

From the foregoing discussion it is obvious that our conclusion is that the court did not err in sustaining defendant's motion to direct a verdict. An affirmance must follow.—Affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, KINDIG, MITCHELL, DONEGAN, and KINTZINGER JJ., concur.