Nancy Sideman et al., Appellants, *v.* Howard Guttman et al., Respondents.

Second Department, March 27, 1972.

*Abrams & Martin* (*Henry H. Abrams* and *Alan Jay Martin* of counsel), for appellants.

*Emile Z. Berman* and *A. Harold Frost* (*Sheila L. Birnbaum* and *Harold L. Schwab* of counsel), for respondents.

SHAPIRO, J. Plaintiff, Mrs. Sideman, was a guest in the home of the defendants, her daughter and son-in-law. She stepped on a throw rug in their apartment which slid from under her and "flew away", causing her to sustain injuries. The trial court dismissed the complaint at the end of the plaintiffs' case upon a jury trial of the issues of liability only, holding that the plaintiffs had failed to prove the existence of a dangerous condition known to the defendants and unknown to Mrs. Sideman.

Under the present law of premises liability a social guest is treated as a licensee, takes the premises as he finds them and is entitled to no greater protection than that owing to a member of the owner's family (*Krause* v. *Alper,* 4 N Y 2d 518; *Golding* v. *Mauss,* 33 A D 2d 64, revd. 27 N Y 2d 580; *Levine* v. *Barfus,* 28 A D 2d 896; *Dragon* v. *Adams,* 18 A D 2d 1120; *Schlaks* v. *Schlaks,* 17 A D 2d 153, mot. for lv. to app. den. 13 N Y 2d 593; *Plotz* v. *Greene,* 13 A D 2d 807, affd. 10 N Y 2d 991; *Traub* v. *Liekefet,* 2 A D 2d 22, affd. 4 N Y 2d 747). The duty which the owner of premises owes to a social guest is twofold: (1) he must abstain from inflicting intentional, wanton or willful injuries; and (2) he must exercise reasonable care to disclose any danger known to him but not likely to be discovered by the guest (*Krause* v. *Alper, supra; Dragon* v. *Adams, supra; Schlaks* v. *Schlaks, supra*).

Mrs. Sideman admitted visiting her daughter "a few days or a week" prior to the accident and the evidence showed that the floor over which the throw rug lay was waxed two weeks prior to the accident. It was also established that Mrs. Sideman knew of the existence of the rug, that it was not fastened to the floor in any way and that she walked over it shortly before the happening of the accident.

These facts distinguish the case at bar from *Golding* v. *Mauss* (*supra*), which is relied upon by the appellants as controlling here. In *Golding,* the plaintiff slipped on a waxed floor in the home of the defendants, her then future in-laws. After a jury trial, a verdict was rendered in her favor and the Appellate Term affirmed the ensuing judgment, but the Appellate Division, First Department, reversed the Appellate Term's determination and the judgment and dismissed the complaint, on the law. The dissenting opinion at the Appellate Division (for affirmance) pointed out that the plaintiff had been to the defendants' home about a month prior to the accident and could not, therefore, have known of the existence of the dangerous condition. It was, however, known by the defendants who had tried unsuccessfully to have it remedied. They never informed the plaintiff of the dangerous condition. The Court of Appeals reversed and remitted the case to the Appellate Division for consideration of the questions of fact, on the grounds set forth in the dissenting opinion at the Appellate Division. That case has no application here, for there the defendants recognized the existence of a dangerous condition of which the plaintiff was unaware and which they had tried unsuccessfully to remedy. Here, however, there is no proof that the defendants knew the rug created a *dangerous* condition, that they realized it might entail an unreasonable risk or that they had reason to believe that Mrs. Sideman would not discover the existence of the "condition" (*Schlaks* v. *Schlaks,* 17 A D 2d 153, 157, *supra*; *Higgins* v. *Mason,* 255 N. Y. 104, 110). It therefore cannot be said that under the social guest rule as presently applied by the Court of Appeals the trial court was wrong in dismissing the complaint.

In sustaining the dismissal of the complaint perforce the authorities above cited, I think I should point out that the Judge-made rule that a social guest is a licensee who must take the premises as he finds them and is entitled to no greater protection than that owing to a member of the owner's family has no basis in logic and should no longer be accorded any legal validity.

The doctrine that social guests are to be regarded as licensees was first formulated in 1856 in England in *Southcote* v. *Stanley* (1 Hurl. & N. 247 [156 Eng. Rep. 1195]). The case involved a suit against a hotel owner who had invited the plaintiff as a visitor. When the plaintiff was leaving the hotel he was injured by a large piece of glass which fell from a door. The court held that the plaintiff had no cause of action against his host since he, as a social guest, was a mere licensee and his host had no obligation to make the place safe for him. POLLOCK, C. B., equated the visitor with a servant, saying that he was in the same position as any member of the establishment who must take his chances with the rest. Another member of the court, BRAMWELL, B., thought the occupier could only be liable for acts of commission as opposed to acts of omission and that, since the declaration (complaint) stated only a want of care by the defendant, the action was not maintainable. The doctrine there enunciated, although since much criticized, has persisted to this day as the applicable law in the majority of American jurisdictions, including New York, although in the country of its origin it has been repudiated by statute (Occupiers' Liability Act [1957], 5 & 6 Eliz. 2, ch. 31).

The explanation usually given for the anomaly of classifying social guests as mere licensees is that the guest is expected to take the premises as the possessor himself uses them and is not entitled to expect that precautions will be taken for his safety in a better manner than the possessor takes for his own safety or that of members of his family (see Restatement, Torts [2d], § 330, comment *h*; Prosser, Law of Torts [2d ed.], pp. 447–448).

Both of the authorities last mentioned, however, note the reason given for the rule with tongue in cheek. Thus, the Restatement says (p. 175), " This has not gone without criticism, and an undercurrent of dissent, based upon the contention that it is not in accord with modern social custom and understanding when a guest is invited ".

Professor Prosser says (p. 448): " There has been some undercurrent of dissent, as to whether this is really in accord with present social customs." In the fourth edition of his Law of Torts (1971; p. 379) he reports, " There has, however, been quite a vigorous undercurrent of dissent, as to whether this is really in accord with present social customs, under which it is contended that the guest, invited and even urged to come, rightfully expects more than mere inactivity for his safety." Prosser also wryly comments in his fourth edition (p. 378) that

the decisions which hold that a social guest, however cordially he may have been invited and urged to come, is not in law an invitee and is nothing more than a licensee make " a distinction which has puzzled generations of law students, and even some lawyers."

So far as my research discloses, every commentator who has discussed this question of the classification of social guests as mere licensees for purposes of determining the level of care owed such guests by the host *and has expressed an opinion of his own* has strongly criticized the rule. (See McCleary, The Liability of a Possessor of Land in Missouri to Persons Injured While on the Land, 1 Mo. L. Rev. 45 [1936]; Harper, *Laube* v. *Stevenson*: A Discussion, 25 Conn. Bar J. 123 [1951]; Prosser, Business Visitors and Invitees, 26 Minn. L. Rev. 573, 612 [1942]; Comment, The Outmoded Distinction Between Licensees and Invitees, 22 Mo. L. Rev. 186 [1957]; Note, Torts-Duty of Occupier to Social Guests, 19 La. L. Rev. 906 [1959]; Comment, Status of the Social Guest: A New Look, 7 Wm. & Mary L. Rev. 313 [1966]; Comment, Negligence-Land Occupiers' Liability for Injuries to Lawful Entrants-Trend Toward Reasonable Care in All Instances, 4 Vill. L. Rev. 256 [1958–59]; Long, Land Occupant's Liability to Invitees, Licensees and Trespassers, 31 Tenn. L. Rev. 485 [1963–64]; Comment, 44 N. Y. U. L. Rev. 426 [1969]; Comment, 9 Santa Clara Lawyer 179 [1968–69]; Comment, 18 Kan. L. Rev. 161 [1969–70]; Comment, 14 S. D. L. Rev. 332 [1969]; Comment, 15 N. Y. L. F. 933, 940–941 [1969].)

In the McCleary article (*supra*, p. 58) the author says: " It is customary for possessors to prepare as carefully, if not more carefully, for social guests as for business guests; furthermore, the social guest has reasons to believe that his host will either make conditions on the premises safe or at least warn of hidden dangers. In this century there is no reason for the courts to take the position that a social guest should not sue his host." The writer of the comment in the William & Mary Law Review (*supra*, p. 320) states: " The traditional view that the social guest is a licensee as a matter of law must be discarded and the guest should be given the same legal status as an invitee. Social intercourse affects almost every individual in our society and some assurance should be given these individuals that they will be protected from the host's negligent act." In Pollock on Torts (14th ed., p. 422) the author aptly states that, although invitation is a word applied in common speech to the host-guest relationship, a guest does not have the benefit of the legal doctrine of invitation so far as concerns

his right to recover for injury suffered by him through the negligence of his host and is legally considered nothing but a licensee. He then asks, " [W]hy in common reason should a person invited for the occupier's pleasure be worse off than one who is about business concerning both?" There is no good answer to this question, it seems to me, unless a tenacious desire to adhere to an outmoded judicial rule is acceptable as a cogent reason.

The comments of the legal scholars have slowly but surely begun to have an impact in effecting decisional and statutory[1] changes in the rule. In *Alexander* v. *General Acc. Fire and Life Assur. Corp.* (98 So. 2d 730) the Court of Appeal of Louisiana stated that the exclusion of the invited social guest from the protection accorded business invitees was unsound. Rejecting the theory that the greater protection against a host's negligence accorded to invitees as against licensees rested on the basis of the host's expectation of a pecuniary benefit, the court concluded that it was illogical to give greater protection to one invited into a home for business purposes than to one invited for social purposes. Adopting the rule that the test of invitee status was whether the host invited the visit, *and that alone,* it ruled that the plaintiff, as a social guest, was owed the same duty of reasonable care by her host, the defendant, that the latter owed to a business invitee. (The case was decided for the defendant, however, on the ground that the plaintiff was guilty of contributory negligence.) In *Foggin* v. *General Guar. Ins. Co.* (250 La. 347) the Supreme Court of Louisiana approved the rule laid down in *Alexander* (see, also, Comment, 27 La. L. Rev. 796 [1967]).

*Alexander* was followed in 1968 by *Rowland* v. *Christian* (69 Cal. 2d 108) in which the California Supreme Court, too, rejected the doctrine that a social guest is a mere licensee and ruled that the standard to be applied in determining liability on the part of the host is the fundamental concept of negligence law that one is liable for injuries caused by his carelessness, *even if the injured party be a trespasser.*[2] Said the court (pp. 117-118): " There is another fundamental objection to the approach to the question of the possessor's liability on the basis of the common law distinctions based upon the status of the injured party as a trespasser, licensee, or invitee. Complexity

1. Connecticut has adopted a statute declaring that a social guest is an invitee (Conn. Gen. Stat. Rev., § 52-55 7a).

2. Since, in our case the plaintiff, from any viewpoint, was not a trespasser, we need not now consider whether the rule should be changed to that extent.

can be borne and confusion remedied where the underlying principles governing liability are based upon proper considerations. Whatever may have been the historical justifications for the common law distinctions, it is clear that those distinctions are not justified in the light of our modern society and that the complexity and confusion which has arisen is not due to difficulty in applying the original common law rules — they are all too easy to apply in their original formulation — but is due to the attempts to apply just rules in our modern society within the ancient terminology. * * *

" A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty." (See, also, *Carlson* v. *Ross,* 271 Cal. App. 2d 29 [1969]; *Fitch* v. *LeBeau,* 1 Cal. App. 3d 320 [1969]; both of which followed the rule laid down in *Rowland* v. *Christian, supra.*)

The Supreme Court of Hawaii has followed the California Supreme Court. In *Pickard* v. *City and County of Honolulu* (51 Haw. 134, 135 [1969]) that court said: " We believe that the common law distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others. We therefore hold that an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual." (See, also, *Gibo* v. *City and County of Honolulu,* 51 Haw. 299 [1969], to the same effect.)

On September 20, 1971 the Supreme Court of Colorado in *Mile High Fence Co.* v. *Radovich* (—— Col. —— [489 P. 2d 308]), like the Supreme Court of Hawaii, ruled that a landowner's liability for negligent injury of an entrant on his premises does not depend solely upon the status of the entrant. After noting that " Colorado, like most jurisdictions, has generally followed the common law distinctions between *trespassers, licensees,* and *invitees* in determining the standard of care

owed by the occupier of land towards those who come upon the land " (p. 311; emphasis in original), the Colorado Supreme Court rejected the doctrine, saying (pp. 314–315): " What we are holding is that *status* or *classification* of one who is upon the property of another is not to be determinative of the occupant's responsibility or the degree of care which he owes to that person. Rather, the occupant, in the management of his property, should act as a reasonable man in view of the probability or foreseeability of injury to others. A person's status as a *trespasser, licensee* or *invitee* may, of course, in the light of the facts giving rise to such status, have some bearing on the question of liability, but it is only a factor — not conclusive " (citing cases; emphasis in original). (See, also, *Ives* v. *Swift & Co.*, 183 N. W. 2d 172, 178, concurring opinion of BECKER, J., in which he said, after citing *Rowland* v. *Christian* [69 Cal. 2d 108, *supra*]: " In that case the court entirely discarded the fictitious common law distinctions based on the injured party's status as a trespasser, licensee, business invitee, social invitee and the like. I submit we should do likewise.")

Chief Judge BAZELON of the Circuit Court of Appeals for the District of Columbia said in *Levine* v. *Katz* (407 F. 2d 303, 305 [concurring in result]): " But in my view our decision does not depend upon adherence to the out-moded ' invitee-licensee-trespasser trinity.' The Supreme Court, several states, and England have all recognized that the common-law classifications and their progeny of subclassifications are discordant with the realities of modern living. In admiralty law the Supreme Court has replaced the trinity with a flexible standard based on the ordinary rule of negligence requiring due care under all the circumstances — a concept which this court has previously adopted to replace conceptual distinctions between ' degrees of care '."

In *Kermarec* v. *Compagnie Generale* (358 U. S. 625) the Supreme Court of the United States rejected as error the action of the District Court in applying the substantive law of this State to the effect that the plaintiff, who had been injured while paying a social call on a sailor aboard the defendant's ship, was a " gratuitous licensee " who could recover only if the defendant had failed to warn him of a dangerous condition within its actual knowledge. In explaining its reasons for refusing to extend to admiralty law the judicially made common-law distinction between an invitee and a licensee, the court said (pp. 630–631): " The distinctions which the common law draws

between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' ''

If our plaintiff were a social guest in the defendants' automobile while it was being driven to the defendants' home and was injured through the latter's negligence, she could be made whole (*Galbraith* v. *Busch,* 267 N. Y. 230, 235; *Pfaffenbach* v. *White Plains Express Corp.,* 17 N Y 2d 132, 135–136), but if no injury occurred on the way and she arrived safely and was there injured through the defendants' negligent maintenance of their premises she, as a social guest there, is bereft of remedy under the present rule in this State.

To cite another example: In *Shapiro* v. *Silverstein* (38 A D 2d 977 [decided herewith]), the infant plaintiff, a child four years, seven months of age, was on the defendants' premises on a Sunday afternoon, June 30, with his father and mother. He was there, as was his mother, because his father, an attorney, who had promised to take him to a Long Island beach for the day, had had to change his plans after he received a call from defendant Stanley Silverstein, a client whom he was representing in a legal action, requesting him to come to his home to discuss the case. When the child's father said he was unable to come because of his promise to take his family to the beach, Mr. Silverstein invited the father to bring his family along so that, while he and the father were discussing the legal action, the infant plaintiff and his mother could use the defendants' private swimming pool. This invitation was accepted. The infant plaintiff, who had never before been in the defendants' home, was injured while he was on his way to the pool, access to which was through a recreation room. The wall between the

room and the outdoor patio near which the pool was located was all clear glass from floor to ceiling, with a part consisting of a sliding glass door. When not being used for passage this door was kept closed because the house was air-conditioned. The child, unaware of the existence of the glass wall, ran into it while trying to go out into the patio and was severely injured when the glass broke. We there are holding, by reason of the existing social guest rule in this State, that whether the infant was to be treated as a social guest or as a business invitee depended upon his father's status on the premises, i.e., whether his father had come there in his capacity as a lawyer to consult with the defendant Stanley Silverstein or whether he had come there as a guest.

It seems ironic that the issue of a defendant's liability for injuring a plaintiff should turn on the happenstance of whether someone else had come to the premises as a business visitor or merely as a social guest. Such an arbitrary distinction does not commend itself as being either just or reasonable. This one example, it seems to me, points up the fact that the social guest rule should no longer be accorded viability.

The foregoing illustrations make it manifest, it seems to me, that *the true test to be applied in these "house" cases should be whether under all the circumstances the host has exercised reasonable care toward the injured party and not whether the latter's status on the premises is that of a business invitee or social guest.* The rule which classifies a social guest as a mere licensee to whom a host owes only the duty of protecting him from wanton or wilful injury and of warning him of concealed dangers or traps of which the host is aware is not only "arbitrary and rigid" (James, Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees, 63 Yale L. J. 605, 612 [1954]) but is contrary to the accepted view of the host-guest relationship in the mores of our times. It seems clear to me that present social customs are wholly inconsistent with the view that a guest who visits a friend does so at his own risk, is subject to the doctrine of *caveat hospes* and is remediless against injury resulting from his host's lack of ordinary care while he is on his host's premises. The law, as a living organism, does not require that the dead hand of the past perpetuate remediable errors.

The Judge-made rule that social guests are bare licensees is a doctrine which deserves final interment. For the Court of Appeals to do so would not involve a charting of a new course (*Woods* v. *Lancet,* 303 N. Y. 349; *Silver* v. *Great Amer. Ins.*

*Co.,* 29 N Y 2d 356). In *Woods,* Judge DESMOND, speaking for the majority of the court said (pp. 354–355): "Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it (*Rumsey* v. *New York & N. E. R. R. Co.,* 133 N. Y. 79, 85, 86, and see *Klein* v. *Maravelas,* 219 N. Y. 383). That opinion notes that Chancellor KENT, more than a century ago, had stated that upwards of a thousand cases could then be pointed out in the English and American reports ' " which had been overruled, doubted or limited in their application " ', and that the great Chancellor had declared that decisions which seem contrary to reason ' " ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." ' And Justice SUTHERLAND, writing for the Supreme Court in *Funk* v. *United States* (290 U. S. 371, 382), said that while legislative bodies have the power to change old rules of law, nevertheless, when they fail to act, it is the duty of the court to bring the law into accordance with present day standards of wisdom and justice rather than ' with some outworn and antiquated rule of the past'."

In *Silver* (*supra,* p. 363) Chief Judge FULD, speaking for a unanimous court, said: "Having concluded that reason and substantial justice call for modifying our prior decisions and relaxing our inflexible rule, there is nothing to deter this court from so doing. Certainly, we need not wait on legislative action. (See, e.g., *Gelbman* v. *Gelbman,* 23 N Y 2d 434, 437; *Greenberg* v. *Lorenz,* 9 N Y 2d 195, 199–200; *Bing* v. *Thunig,* 2 N Y 2d 656, 667; *Woods* v. *Lancet,* 303 N. Y. 349, 355.) As the cited decisions establish, *stare decisis* does not compel us to follow blindly a court-created rule — particularly one, as here, relating to a procedural matter — once we are persuaded that reason and a right sense of justice recommend its change."

In my opinion, "reason and a right sense of justice" cry out for the abolition by the Court of Appeals of the social guest rule. Nevertheless, as a subordinate court bound by existing precedents established by the highest court of our State, we must affirm the judgment here appealed from.

LATHAM, Acting P. J., GULOTTA, BRENNAN and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Queens County, entered in 1971 (precise date not specified in the record or brief), affirmed with costs.